UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

DOMINIC SCHINDLER HOLDING, AG,    :
         :
        Plaintiff,    :
         :
    -against-    :
         :
PETER MOORE,    :
         :
        Defendants.    :

-------------------------------------------------------- X

**REPORT AND RECOMMENDATION**
20 Civ. 4407 (RPK) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Dominic Schindler Holding AG ("Plaintiff" or "Schindler AG") commenced this diversity action against Defendant Peter Moore ("Defendant" or "Mr. Moore") alleging breach of contract. See Complaint ("Compl."), ECF No. 1. Pending before the Court is Plaintiff's motion for a default judgment. See ECF No. 26. The Honorable Rachel P. Kovner referred the motion to the undersigned for report and recommendation. For the reasons and to the extent set forth below, it is respectfully recommended that the motion be granted.

## I. BACKGROUND

### A. Factual History[1]

Schindler AG is a Swiss corporation with its principal place of business in Zurich, Switzerland. See Compl. ¶ 1. Mr. Moore is an individual who resides in the City and State of

_____

[1] The facts are taken from the Complaint documents attached thereto. The documents incorporated by reference and attached to the Complaint are uncontroverted; thus, they may be considered in determining this motion. See generally Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (upholding liability determination made based on "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiffs"). In addition to the documents attached to the Complaint, Plaintiff has submitted two declarations with exhibits in support of its motion for a default judgment and an award of damages: the Declaration of Dominic Schindler ("Schindler Decl."), ECF No. 26-3, with Exhibits 1 through 6; and the Declaration of Erwin J. Shustak ("Shustak Decl."), ECF No. 26-2, with Exhibits 7 through 11.

New York, and purports to be an architect and real estate developer.  See id. ¶ 2.

In October 2017, Plaintiff agreed to loan Defendant $600,000.00 at 12% annual interest, with the loan principal and all accrued interest to be repaid on or before April 17, 2018.  See Compl. ¶ 5.  On October 18, 2017, Defendant executed a written promissory note (the "Note") acknowledging the debt.  See id. ¶ 6 & Note, Ex. A.  Defendant executed two additional documents:  (1) a pledge of membership interests he owned in two limited liability companies as collateral securing the Note (the "Pledge Agreement"), id. ¶ 7 & Pledge Agreement, Ex. B; and (2) an assignment of those membership interests to Plaintiff (the "Assignment"), id. ¶ 7 & Assignment, Ex. C.  Upon receipt of the executed Note, Pledge Agreement and Assignment from Defendant, Plaintiff wired $600,000.00 to Defendant's bank account to fund the loan.  See id. ¶ 8.

Defendant failed to repay any of the loan principal or pay any accrued interest by the maturity date of April 17, 2018.  See Compl. ¶ 9.  On May 12, 2020, Plaintiff, through counsel, made a formal demand to Defendant and his counsel for payment of the outstanding amounts due.  See id. ¶ 10 & Ex. D.  On May 19, 2020, Plaintiff notified Defendant that it intended to sell at public auction one of the membership interests that Defendant had pledged as security.  See id. ¶ 11.  Plaintiff believes the second membership interest is worthless and has not pursued it.  See id. ¶ 12 n.1.

The parties subsequently negotiated a written Membership Interest Transfer Agreement ("MITA") whereby Plaintiff agreed to accept $65,000.00 in cash from a third party for one of the membership interests pledged by Defendant instead of conducting a sale at public auction.  See id. ¶ 12 & MITA, Ex. E.  This agreement further provided that the $65,000.00 would be applied against Defendant's outstanding debt.  See id. ¶ 12; MITA ¶ 3.  Plaintiff alleges that by signing

the MITA, Mr. Moore "expressly acknowledged and confirmed the terms of the Promissory Note and his debt to Plaintiff" as that agreement explicitly references the $600,000.00 loan to Defendant, as well as Defendant's pledge and assignment of the membership interests as collateral for that loan, and provides that the $65,000.00 sale proceeds shall be applied to reduce Defendant's obligations to Plaintiff in connection with the loan.  See id. ¶ 13.

On August 7, 2020, Plaintiff received the $65,000.00 pursuant to the MITA and applied that amount to the outstanding loan principal.  See Compl. ¶ 14; Ex. 6 at 23.  As of the date the Complaint was filed, September 18, 2020, Plaintiff had not received any payment on the Note other than the $65,000.00 received pursuant to the MITA and that was credited against the amounts Defendant owes to Plaintiff.  See id. ¶ 15.

## B. Procedural History

Plaintiff filed the Complaint in this action on September 18, 2020.  On November 16, 2020, Plaintiff filed a Waiver of Service executed by Defendant on October 27, 2020.  See ECF No. 5.  When Defendant failed to timely answer or otherwise respond to the Complaint, this Court issued an order directing Defendant to answer by February 10, 2021.  See Order of 1/11/21.  Defendant failed to answer or otherwise respond to the Complaint, and on Plaintiff's request, a Clerk's entry of default was issued on April 27, 2021.  See ECF No. 21.

Plaintiff filed the instant motion for default judgment, see ECF No. 26, and the motion was referred to this Court for a report and recommendation.  By FedEx, overnight express delivery, Plaintiff sent Defendant its motion, including, inter alia, the Clerk's entry of default, a copy of the Complaint, and a proposed judgment, on the date of filing.  See ECF No. 26-5.  The mailings were made to two locations: 447 Henry Street, Brooklyn, New York 11231, and 425 Hoyt Street, Brooklyn, New York 11231.  See id.  Plaintiff further e-mailed copies to Mr. Moore

3

at the e-mail address included on his waiver of service, and to Mr. Moore's counsel, Lewis Kuper.  See id.  Approximately two weeks later, Plaintiff's counsel filed a supplemental declaration regarding mailing of the motion papers in which he stated that (1) the copies sent to Mr. Moore's "current home address," 447 Henry Street, Brooklyn, New York 11231, were successfully delivered; (2) the e-mail was successfully delivered as there was no "bounce back" response; and (3) the documents sent to the Hoyt Street address, which were sent to this address to comply with notice requirements in the Note, were returned, an eventuality that Plaintiff "fully expected" because Defendant "no longer accepts mail at that address."  Supplemental Decl. ¶¶ 3-4 & Exs. 12-13, ECF No. 27.

In its motion, Plaintiff seeks judgment in the total amount of $1,172,056.97, comprising unpaid principal, accrued interest, a late charge, and attorneys' fees and costs.  Plaintiff further seeks daily interest from the day after it filed its motion, May 28, 2021, through the date of entry of judgment.  Defendant has not responded to the motion for a default judgment.

## II.  LEGAL STANDARDS

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment.  See Moulton Masonry, 779 F.3d at 186; Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded.  See Fed. R. Civ. P. 55(b).  The court must ensure that (1) the plaintiff satisfied all required procedural steps in moving for default judgment, see Local Civ. R. 55.2; and (2) the plaintiff's allegations, when accepted as true, establish

liability as a matter of law, see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

A defaulting defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 58 (2d Cir. 1992).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks & citation omitted); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (the court "need not agree that the alleged facts constitute a valid cause of action" (internal quotation marks & citation omitted)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (acknowledging the court's authority, even after default, to determine whether plaintiff has stated a cause of action).  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Enron Oil, 10 F.3d at 95-96.

While a party's default "is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Moulton Masonry, 779 F.3d at 189 (internal quotation marks & citation omitted).  The court "must conduct an inquiry to 'ascertain the amount of damages with reasonable certainty.'"  Morton v. Cohen, No. 17 Civ. 6166 (JMA), 2019 WL 1050997, at *1 (E.D.N.Y. Mar. 5, 2019) (quoting  Credit Lyonnais Secs., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  A hearing is not necessary so long as the court "'ensure[s] that there [i]s a basis for the damages specified in the default judgment,' such as by relying on detailed affidavits and documentary evidence."  Finkel v. Firequench, Inc., No. 20 Civ. 0010 (BMC), 2020 WL 1323017, at *1 (E.D.N.Y. Mar. 20, 2020) (quoting Transatlantic

Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).

## III.  ANALYSIS

### A.  Procedural Requirements

Defendant's execution of a waiver of service dispenses with the need to review the adequacy of service of the summons and complaint.  Plaintiff has further complied with Local Civil Rule 55.2 by sending the Clerk's certificate of default, a copy of the complaint and a proposed form of default judgment in connection with the instant motion to Defendant at his home address.  The Court respectfully recommends finding that the requirements of Local Rule 55.2 have been met.

### B.  Liability

The Note executed by the parties, states that it "shall be governed by and enforced in accordance with the laws of the State of New York."  Note ¶ 11.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).  "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."  Greenfield v. Philles Recs., Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565 (2002).  "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself and concerning which there is no reasonable basis for a difference of opinion."  Id. (internal quotation marks & citation omitted). The Complaint sets forth all the elements for a breach-of-contract claim under New York law, alleging that (1) the parties entered into a written agreement, the Note, (2) Plaintiff performed its obligation by delivering funds to Defendant, (3) Defendant failed to meet his obligation to repay

the loan, except for the $65,000.00 credited from the MITA, and (4) Plaintiff incurred damages. Finding no ambiguity in the parties' agreement, this Court respectfully recommends that a default judgment be entered against Defendant.

## C. Damages

Upon review of Plaintiff's submissions, the Court finds that no hearing is necessary as it is able to ascertain Plaintiff's damages to a reasonable certainty. Plaintiff seeks to recover the loan principal, accrued interest through entry of judgment, a contractual late charge, and attorneys' fees and costs.

### a) Unpaid Principal Balance

Plaintiff seeks the outstanding principal balance of the loan due on the Maturity Date, April 17, 2018. It offers two alternative amounts: the original principal amount of $600,000.00, or a principal balance increased to $613,507.13 by operation of a term in the Note.

Plaintiff's preferred calculation increases the original principal amount of $600,000.00 to $613,507.13[2] based upon application of paragraph 1 of the Note. The Note authorizes an increase in principal if, on the Maturity Date, the United States Dollar ("USD") lost value relative to the Swiss Franc ("CHF") over the term of the Note:

> Borrower acknowledges that the exchange rate for the Swiss Franc, on the date of the loan is 0.98836 Swiss Francs to $1.00 US dollar and thus the principal balance of the loan is equal to $593,016.00 Swiss Francs. Borrower agrees that notwithstanding that the loan is made in US Dollars, in the event that the exchange rate, on the Maturity Date is less than 0.98836 Swiss Francs to $1.00 US dollar, Borrower shall nevertheless pay no less than the equivalent of 0.98836 Swiss Francs, after exchanged from US dollars to Payee on the Maturity Date, and thus Borrower agrees to pay more than the principal sum due in that event . . .

---

[2] After crediting the $65,000 MITA amount, the principal balance owed would decrease to $548,507.13.

Note ¶ 1; see Schindler Decl. ¶ 11 ("Defendant must pay more principal sufficient to compensate Plaintiff for the consequent devaluation of the loan proceeds."). Plaintiff urges the Court to take judicial notice of the exchange rate for April 17, 2018, as set by the Federal Reserve, the central bank of the United States. As the exchange rate shown by the Federal Reserve on that date was 0.9666 CHF to $1.00 USD, see Federal Reserve, Foreign Exchange Rates: Release Date April 23, 2018, www.federalreserve.gov/releases/h10/20180423, Plaintiff argues this rate should be used to calculate the increase in the principal amount.

The Note anticipates a situation in which Defendant would owe more than the original principal amount, but it does not establish any mechanism by which the appropriate exchange rate would be determined, nor does it designate which central bank's exchange rate would be used to calculate any increase in the principal. Plaintiff's suggestion that the Federal Reserve's exchange rate be used is not supported by the parties' agreement or by the prior dealings between the parties. The Note clearly states that the exchange rate on the date of the loan was 0.98836 CHF to $1.00 USD, a rate that does not appear for any relevant date in the Federal Reserve's historical data. Instead, the historical data shows that on the date of the loan, October 18, 2017, the exchange rate set by the Federal Reserve was 0.9817 CHF, and on the date of the wire transfer of the funds, October 19, 2017, the Federal Reserve rate was 0.9751 CHF. See Federal Reserve, Foreign Exchange Rates: Release Date October 23, 2017, www.federalreserve.gov/releases/h10/20171023. As the Federal Reserve exchange rate was not used to calculate the loan amount in the Note, it would not be appropriate to apply that bank's rate here. In the absence of any other argument or methodology, the Court declines to recommend an increase in the principal.

Plaintiff offers that, should the Court disagree with its calculation increasing principal, it

"agrees to waive any claim to any additional principal under Paragraph 1 of the Note and any interest or late fees thereon."  Motion at 10 n.4; see Schindler Decl. ¶ 11.  The Court accepts this waiver.  In this instance, the $600,000.00 principal owed on the Note, minus the $65,000.00 MITA credit, leaves a balance of $535,000.00.  It is recommended that Plaintiff be awarded this amount as unpaid principal.

### b) Interest

Plaintiff is seeking accrued interest as well as additional interest through the entry of judgment.  Pursuant to the Note, interest accrued at the rate of 12% per annum from inception of the loan through the Maturity Date of April 18, 2018.  See Note.  If payment was not timely made, Defendant agreed that the interest rate on any unpaid balance of the principal when due would be the lesser of 24% or the highest interest rate permitted by law.  See id. ¶ 3.  Under New York law, a loan in the amount at issue is subject only to the criminal usury rate of 25% or greater.  See N.Y. Gen. Oblig. Law § 5-501 (6); N.Y. Penal Law §§ 190.40, 190.42.  Plaintiff seeks to recover interest at the rate of 24% from April 18, 2018 forward.[3]

Plaintiff provided two detailed spreadsheets calculating unpaid principal and interest through June 16, 2021 – one schedule using the unpaid principal figure as increased due to changes in the exchange rates, see Schindler Decl. Ex. 5, and an alternate schedule without the

---

[3] Under New York law, "[u]sury is an affirmative defense which a defendant must either assert in an answer or as a ground to move to dismiss the complaint . . . [o]therwise, the defense is waived." Power Up Lending Grp., Ltd. v. Cardinal Res., Inc., 160 A.D.3d 674, 675, 74 N.Y.S.3d 67, 68 (2d Dep't 2018) (citations omitted) (reversing determination that certain provisions of the agreements were illegal under the criminal usury statute where defendant failed to answer or appear and plaintiff was granted a default judgment); see Nimkoff v. Drabinsky, No. 17 Civ.4458 (PKC) (RLM), 2020 WL 3806146, at *7 (E.D.N.Y. June 9, 2020) (noting that defaulting defendant waived usury defense), report & recommendation adopted, 2020 WL 3804458 (E.D.N.Y. July 7, 2020).  Any argument that the loan was usurious is waived by Defendant's failure to appear in this action and assert the defense.

principal increase.  See id. Ex. 6 (the "Alternate Schedule").  Given the recommendation that Plaintiff recover the principal unadjusted by any change in exchange rates, the Court refers to the Alternate Schedule.

Starting on October 19, 2017, interest began to accrue at the rate of 12%, or $197.26 per day, through April 17, 2018.  See Alternate Schedule at 1-4.  On April 18, 2018, the interest rate increased to 24%, or $394.52 per day, which daily rate continued until the amount of unpaid principal was reduced by application of the $65,000.00 MITA payment.  See id. at 4-23.  From August 7, 2020 forward, interest continued to accrue at the rate of 24%, but the daily rate decreased to $351.78 due to the decrease in principal owed.  See id. at 23-29. Calculated through the date the instant motion was filed, May 27, 2021, the accumulated daily interest owed was $471,313.97.  See id. at 29.  The Court recommends Plaintiff be awarded this amount, plus additional interest of $351.78 per day from May 28, 2021 through the date of entry of judgment.

### c) Late Charge

The Note also provides that if any payment becomes overdue for in excess of ten (10) days, the Borrower must pay a one-time "Late Charge" calculated as $0.05 for each $1.00 that remained unpaid after expiration of the ten (10) day period.  See Note ¶ 10. As the loan repayment was due on April 18, 2018, and no payment was made by this date, the late charge provision was triggered on April 28, 2018, after the expiration of the ten-day period, and Plaintiff is entitled to recovery of the late charge.  As the outstanding principal balance on the applicable date was $600,000.00, the late charge is $30,000.00.  The Court respectfully recommends that Plaintiff be awarded $30,000.00 as the contractual late charge.

### D. Attorneys' Fees And Costs

Plaintiff seeks an award of its attorneys' fees pursuant to the Note.  "In a diversity case,

the question whether to award attorneys' fees is governed by state law." Precise Leads, Inc. v. Nat'l Brokers of Am., Inc., No. 18 Civ. 8661 (RA) (SLC), 2020 WL 736918, at *6 (S.D.N.Y. Jan. 21, 2020), report & recommendation adopted as modified, 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NewJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). The Note provides that in the event of non-payment, the borrower shall pay all collection costs "including reasonable attorneys' fees and disbursements." Note ¶ 3; see id. ¶ 7 ("if collection is necessary after a default, [Mr. Moore] shall pay reasonable attorney's fees, plus all costs of collection"). As the language in the Note is clear and unambiguous, Plaintiff is entitled to recover reasonable attorneys' fees.

The parties' agreement pertains to "all costs of collection"; therefore, in addition to the reasonable attorneys' fees related to this litigation, Plaintiff may recover costs incurred as part of its collection efforts expended prior to commencement of the case. See Bhungalia Fam., LLC v. Agarwal, 317 F. Supp. 3d 727, 742 (S.D.N.Y. 2018) (where promissory note permitted the costs of collection of a debt, including reasonable attorneys' fees, plaintiff was "entitled to recover legal fees for the collection activity that preceded the commencement of this lawsuit, as well as the fees incurred in the lawsuit's prosecution"); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, at *5 (S.D.N.Y. Aug. 11, 2009) (as the agreement provided for debtor's payment of all costs incurred in collecting the debt, plaintiff was "entitled to attorneys' fees for enforcing defendants' obligations, and may be compensated for such activities even if they occurred before [Plaintiff] filed this action"). "However, regardless of the specific contractual language, '[b]ecause a fee-shifting clause can produce perverse incentives

for a litigant (and his attorneys), courts must scrutinize fee requests to ascertain whether they are

reasonable.'" Denim Habit, LLC v. NJC Boston, LLC, No. 13 Civ. 6084 (ADS) (SIL), 2016 WL

2992124, at *4 (E.D.N.Y. May 23, 2016) (quoting Diamond D Enters. USA, Inc. v. Steinsvaag,

979 F.2d 14, 19 (2d Cir. 1992) (internal citation omitted)).

Where a contract provides for the recovery of attorneys' fees, courts will award

"whatever amounts have been expended by the prevailing party so long as those amounts are not

unreasonable." F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987).

In determining reasonableness under New York law,

> [a]n award of an attorney's fee pursuant to a contractual provision may only
> be enforced to the extent that the amount is reasonable and warranted for
> the services actually rendered.  In determining reasonable compensation for
> an attorney, the court must consider such factors as the time, effort, and skill
> required; the difficulty of the questions presented; counsel's experience,
> ability, and reputation; the fee customarily charged in the locality; and the
> contingency or certainty of compensation.  While a hearing is not required
> in all circumstances, the court must possess sufficient information upon
> which to make an informed assessment of the reasonable value of the legal
> services rendered. There must be a sufficient affidavit of services, detailing
> the hours reasonably expended and the prevailing hourly rate for similar
> legal work in the community.

Major League Baseball Prop., Inc. v. Corporacion de Television y Microonda Rafa, S.A., No. 19

Civ. 8669 (MKV) (GWG), 2021 WL 56904, at *2 (S.D.N.Y. Jan. 7, 2021) (quoting Sterling

Nat'l Bank v. Alan B. Brill, P.C., 186 A.D.3d 515, 520, 129 N.Y.S.3d 151 (2d Dep't 2020)

(internal quotation marks & citations omitted)); see F.H. Krear, 810 F.2d at 1263 ("A variety of

factors informs the court's determination of whether a requested amount of attorneys' fees is

reasonable or unreasonable, including the difficulty of the questions involved; the skill required

to handle the problem; the time and labor required; the lawyer's experience, ability and

reputation; the customary fee charged by the Bar for similar services; and the amount involved."

(internal quotation marks & citation omitted)).

The lodestar method is generally used "in which the hours reasonably spent by counsel, as determined by the Court, [are] multiplied by the reasonable hourly rate." F.H. Krear, 810 F.2d at 1263 (alteration in original; internal quotation marks & citation omitted). Federal courts determining the reasonableness of an attorneys' fees often use the same analysis whether the award is based on a contractual provision or a fee-shifting statute. The Second Circuit recently advised in a case involving contractual attorneys' fees that the court should "calculate a 'presumptively reasonable' fee based on a reasonable number of hours expended and a 'reasonable hourly rate, taking account of all case-specific variables'" Lebetkin v. Giray, No. 20-1374, 2021 WL 2965323, at *3 (2d Cir. July 14, 2021) (summary order) (quoting Lilly v. City of New York, 934 F.3d 222, 229-30 (2d Cir. 2019)), and that a "reasonable hourly rate is "the rate a paying client would be willing to pay.'" Id. (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 189-90 (2d Cir. 2008)). District courts have also used fee-shifting jurisprudence to determine a reasonable attorneys' fees based on contract, finding that "to determine the fees due to plaintiff under the clear contractual fee-shifting provision, the [c]ourt must ascertain the 'presumptively reasonable fee' for the legal services rendered by plaintiff's counsel in this matter, that is, 'what a reasonable client would be willing to pay.'" LG Cap. Funding, LLC v. M Line Holdings, Inc., 422 F. Supp. 3d 739, 760 (E.D.N.Y. 2018) (quoting Arbor Hill,  522 F.3d at 183-84; additional citations omitted); see Griffen Sec., LLC v. Citadel Car Alarms, LLC, No. 19 Civ. 3494 (VSB) (GWG), 2020 WL 3264173, at *3 (S.D.N.Y. June 17, 2020) (hourly rate for plaintiff's attorneys should be "what a reasonable, paying client would be willing to pay," (quoting Arbor Hill, 522 F.3d at 184)), report & recommendation adopted, 2020 WL 3791869 (S.D.N.Y. July 6, 2020); NSI Int'l, Inc. v.

13

Mustafa, No. 12 Civ. 5528 (JFB) (AKT), 2016 WL 11263167, at *5 (E.D.N.Y. July 22, 2016)
(for contractual attorneys' fee award, applying Arbor Hill and determining the presumptively
reasonable fee), report & recommendation adopted, 2016 WL 8672947 (E.D.N.Y. Sept. 9, 2016),
aff'd, 726 F. App'x 78 (2d Cir. 2018). "Whether the calculation is referred to as the lodestar or
the presumptively reasonable fee, courts will take into account case-specific factors to help
determine the reasonableness of the hourly rates and the number of hours expended." Am. Fire
& Cas. Co. v. Scott Elec. Servs., LLC, No. 15 Civ. 3111 (ADS) (AKT), 2017 WL 395207, at *2
(E.D.N.Y. Jan. 9, 2017) (internal quotation marks & citation omitted), report & recommendation
adopted, 2017 WL 374728 (E.D.N.Y. Jan. 25, 2017).

  Under New York law, "[t]he burden is on counsel to keep and present records from
which the court may determine the nature of the work done, the need for it, and the amount of
time reasonably required; where adequate contemporaneous records have not been kept, the
court should not award the full amount requested." F.H. Krear & Co., 810 F.2d at 1265.
Plaintiff seeks attorneys' fees in the total amount of $111,471.25, and supports its request with
contemporaneous time entries and billing records ("Time Records"), see Shustak Decl. Ex. 10, as
well as information regarding three specific billers:  (1) principal attorney Erwin Shustak, a
named partner with over 45 years' experience; (2) senior associate attorney Joseph Mellano, a
2015 law school graduate with experience in business and employment law; and (3) Walter
Babst, an ABA-certified paralegal with over six years' experience. See id. ¶¶ 15-18.  It also
seeks to recoup fees charged by "several law clerks."[6]  Upon review of the Time Records, the

---

[6] Mr. Shustak provides billing codes used on the Time Records for the timekeepers named in his
Declaration. Although he represents that all entries numbered "23" are "law clerks," there are
numerous entries for additional unidentified timekeepers numbered "3," "10," "13," "17," "21,"
"22," "24," and "25" who had hourly billing rates ranging from $145 to $465.  The Court's
references herein to the "law clerks" billers include all unidentified timekeepers.

14

application is broken down as follows:

| Billing Prof'l | Hrly Rate Sought | Hrs Billed | Total Fee Sought |
|---|---|---|---|
| Shustak | $795.00 | 52.75[7] | $ 41,936.25 |
| Mellano | $395.00 | 137.75 | $ 54,411.25 |
| Babst | $195.00 | 37.25 | $ 7,263.75 |
| "Law Clerks" | Variable | 43.5 | $ 7,860.00 |

As Plaintiff has not provided any information about the law clerks' qualifications or levels of experience, this Court is unable to determine whether the hourly rates charged, or work performed, by these individuals was reasonable. The Court thus respectfully recommends that the fees of these timekeepers be excluded from any award.

Plaintiff's request for attorneys' fees includes time spent drafting this motion dedicated to the request for attorneys' fees. Under "New York law, 'a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves,'" rather an "award of 'fees on fees' requires 'specific language to indicate that time spent in justifying a fee application was to be included.'" Thor 725 8th Ave. LLC v. Goonetilleke, 675 F. App'x 31, 33-34 (2d Cir. 2017) (summary order) (quoting F.H. Krear, 810 F.2d at 1266-67); see Novick v. AXA Network, LLC, 714 F. App'x 22, 26 (2d Cir. 2017) (summary order) (New York attorneys' fees provision "must evidence 'unmistakably clear intent regarding the recovery of fees on fees'" (quoting IG Second Generation Partners, L.P. v. Kaygreen Realty Co., 114 A.D.3d 641, 980 N.Y.S.2d 479, 481 (2d Dep't 2014))). As the Note does not specifically reference Plaintiff's entitlement to fees on fees, it may not recover those amounts. The Time Records include 27 hours total billed for the preparation of this motion for

---

[7] The final page of the Time Records shows a non-billable charge at Mr. Shustak's rate for 0.75 of an hour that has been removed from his total hours billed.

the total amount of $11,465.00.  See Time Records, Ref. Nos. 380-403.[8]  Four of the entries for

5.25 hours and totaling $2,373.75, see id. Ref. Nos. 396-98, 400, specifically describe the

preparation of materials seeking attorneys' fees and will be excluded entirely from the

recommended award.  The extent to which the remaining time entries for preparation of the

instant motion included time spent for the recovery of attorneys' fees is not apparent from the

generic billing descriptions.  The necessity of further reduction for "fees on fees" will be

considered as part of the analysis of hours expended, below.

      In assessing the reasonableness of an attorney's hourly rate, the court must consider

whether the requested rates are in line with those prevailing in the relevant community for

similar services by lawyers of reasonably comparable skill, expertise and reputation.  See Blum

Stenson, 465 U.S. 886, 895 n.11 (1984).  "[C]ourts in the Second Circuit follow the forum rule,

which dictates that 'courts should generally use the hourly rates employed in the district in which

the reviewing court sits in calculating the presumptively reasonable fee.'"  Bond v. Welpak

Corp., No. 15 Civ. 2403 (JBW) (SMG), 2017 WL 4325819, at *5 (E.D.N.Y. Sept. 26, 2017)

(quoting Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)); see Amerisource

Corp. v. Rx USA Int'l Inc., No. 02 Civ. 2514 (JMA), 2010 WL 2160017, at *9 (E.D.N.Y. May

26, 2010) (in contractual attorneys' fees case, determining that the "hourly rate generally must be

consistent with rates charged within the district in which the reviewing court sits" (citing Arbor

Hill, 493 F.3d at 119)).  "In this District, approved hourly rates for attorneys normally range

from $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for

junior associates, and $70 to $100 for paralegals."  56 Willoughby A LLC v. Zhang, No. 20 Civ.

---

[8] The Time Records include a column title "Ref #" which may assign a unique identifier to each
entry.  As there are frequently multiple entries by a single biller on a single date, the Court will
refer to the entry by the "Ref. No.," where appropriate.

3973 (CBA) (SJB), 2021 WL 3622084, at *9 (E.D.N.Y. July 27, 2021) (internal quotation marks & citation omitted) (awarding contractual attorneys' fees), report & recommendation adopted, 2021 WL 3617671 (E.D.N.Y. Aug. 16, 2021); see LG Cap. Funding, LLC v. 5Barz Int'l, Inc., No. 16 Civ. 752 (KAM) (JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (noting when awarding contractual attorneys' fees that "[c]ourts have found that the prevailing hourly rates in this district are generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates"); Mor USA, Inc. v. Adam Trading, Inc., No. 19 Civ. 07283 (AMD) (ST), 2021 WL 799327, at *6 (E.D.N.Y. Feb. 10, 2021) (reducing paralegal hourly rate from $195 to $100), report & recommendation adopted, 2021 WL 796061 (E.D.N.Y. Mar. 1, 2021).  In addition to customary billing rates, "case-specific factors like the novelty or complexity of the matter are appropriately considered in determining the reasonable hourly rate or hours billed." Lilly, 934 F.3d at 232.  The Court respectfully recommends that the hourly rates of all three remaining billing professionals be reduced.

Mr. Shustak's hourly rate of $795 is well above the generally accepted range in this District, particularly for straight-forward litigation such as is the case here.  In his Declaration, he lists the jurisdictions in which he is admitted to practice, noting that he has practiced law for 45 years in New York, New Jersey and California as well as in arbitration forums throughout the country and overseas.  Shustak Decl. ¶ 16.  He does not, however, discuss specifics regarding practice areas or experience in commercial litigation, nor does he argue that the issues presented in this litigation were particularly complex or utilized his expertise.  To the contrary, Plaintiff has represented that this is a "straightforward action for breach of a promissory note," see Compl. Overview, or a "straightforward promissory note case," see Motion at 1.  "Complex cases of long duration litigated by well-experienced counsel warrant a court to consider a comparatively high

hourly rate, while less complex matters, even if litigated by experienced counsel, support a lower rate." Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, No. 10 Civ. 2262 (DRH) (AYS), 2019 WL 2870721, at *6 (E.D.N.Y. June 18, 2019), report & recommendation adopted, 2019 WL 2869150 (E.D.N.Y. July 3, 2019); see Nimkoff, 2020 WL 3806146, at *9 (reducing $520 rate to $300 for a partner with more than 35 years' experience in sophisticated commercial litigation, noting, inter alia, that the action to collect on a promissory note "was neither legally complex nor especially hard fought" in light of defendant's default). The hourly rates sought by Mr. Mellano and Mr. Babst are also beyond the range of reasonable rates in this District. Considering all the relevant factors, the Court recommends hourly rates of $450 for Mr. Shustak, $325 for Mr. Mellano, and $100 for Mr. Babst.

The Court must also determine the reasonableness of the hours expended. When considering an application for attorneys' fees, the Court should exclude "excessive, redundant, or otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). If the hours claimed are "insufficiently documented, the court may decrease the [contractual attorneys' fees] award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought." Cap. One, N.A. v. Auto Gallery Motors, LLC, No. 16 Civ. 6534 (PKC) (SIL), 2020 WL 423422, at *2 (E.D.N.Y. Jan. 27, 2020) (internal quotation marks & citation omitted); see Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (to deal with surplusage, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application" (internal quotation marks & citation omitted)).

The time billed on some tasks here is excessive in some instances. For example, counsel does not support the over 23 hours devoted to drafting and filing a five-page, single claim

complaint in a "straightforward" action.  There are also multiple instances of block billing, the aggregating multiple tasks into a single entry, which "renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary." Molefi v. Oppenheimer Tr., No. 03 Civ. 5631 (FB) (VVP), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007) (alteration in original; internal quotation marks & citation omitted).  The generalized descriptions regarding preparation of the instant motion make it difficult to discern where noncompensable work seeking fees on fees was performed.  Upon a thorough review of the time records and considering all the factors, the Court finds that a modest 10% reduction in the hours billed, rounded to the nearest quarter hour, would trim the excess, address any additional billing for fees on fees, and result in a reasonable number of hours billed.  See Ortiz v. City of New York, 843 F. App'x 355, 360 (2d Cir. 2021) (summary order) (in determining a fee application where "there are problems with billing records, such as vague entries or block-billing, we have approved the use of percentage cuts as a practical means of trimming" the application (citation omitted)); E. Sav. Bank, FSB v. Robinson, No. 13 Civ. 7308 (ADS) (SIL), 2016 WL 3365091, at *10 (E.D.N.Y. May 9, 2016) (recommending "an across-the-board percentage cut of ten percent to account for excessive or otherwise improper billing"), report & recommendation adopted sub nom. E. Sav. Bank v. Robinson, 2016 WL 3102021 (E.D.N.Y. June 2, 2016);  Carco Grp., Inc. v. Maconachy, No. 05 Civ. 6038 (ARL), 2011 WL 6012426, at *5 (E.D.N.Y. Dec. 1, 2011) (for contractual attorneys' fees, applying, inter alia, reductions in hourly rates and a 25% reduction for duplicative work), rev'd in part, vacated in part sub nom. CARCO GRP., Inc. v. Maconachy, 718 F.3d 72 (2d Cir. 2013) (affirming attorneys' fees award "including all reductions and modifications other than the twenty-percent reduction" tied to the amount of the damages award).

Applying the reduced hourly rates and reduction in the hours billed, the Court respectfully recommends an award of attorneys' fees in the total amount of **$63,200.00**, broken down as follows:

| Billing Prof'l | Rec. Hrly Rate | Rec. Hrs | Rec. Fee Award |
|---|---|---|---|
| Shustak | $450.00 | 46.75 | $ 21,037.50 |
| Mellano | $325.00 | 119.5 | $ 38,837.50 |
| Babst | $100.00 | 33.25 | $  3,325.00 |

Plaintiff further seeks costs incurred to date, but has neither indicated what those costs may be, nor provided any documentation substantiating any costs. The Court may, however, take judicial notice of the District's filing fee as a cost. See Rudler v. Houslanger & Assocs., PLLC, No. 18 Civ. 7068 (SJF) (AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020). The docket reflects Plaintiff's payment of the $400.00 filing fee, see ECF No. 1, and the Court respectfully recommends that Plaintiff be awarded this amount as a cost.

## IV.  CONCLUSION

For the reasons stated above, this Court respectfully recommends that Plaintiff's motion for default judgment on liability against Mr. Moore be granted, and that Plaintiff be awarded the following damages:

> (1)  $535,000.00 in unpaid principal;

> (2)  interest in the amount of $471,313.97 through May 27, 2021, plus additional interest of $351.78 per day from May 28, 2021 through the date of entry of judgment;

> (3)  late charge in the amount of $30,000.00; and

> (4)  attorneys' fees totaling $63,200.00; and costs amounting to $400.00.

If the District Court adopts this Report & Recommendation, Plaintiff shall, within 21 days of the adoption, submit a revised proposed judgment in accordance with this Order.

## V. OBJECTIONS

A copy of this report and recommendation is being provided to the Plaintiff via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision."). The Court will mail a copy of this Report and Recommendation to Defendant Peter Moore at 447 Henry Street, Brooklyn, New York 11231.

Dated:  Brooklyn, New York
        January 12, 2022

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge